**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TALECIA CHAMBERS and
BILLY JOE CHAMBERS,

Plaintiffs,

v.

Case No. 09-14731
Hon. Lawrence P. Zatkoff

INGRAM BOOK CO., INGRAM PUBLISHING SERVICES, INC., LIGHTNING SOURCE, INC., ERICA COLEMAN, and JOHN DOE 1-10,

Defendants.
_______________________________/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 20, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants Ingram Book Company, Ingram Publisher Services Inc., and Lightning Source Inc.'s (collectively, "Ingram Defendants") motion for attorneys' fees and costs [dkt 71] and Plaintiffs' motion to enlarge time to respond to motion for attorneys' fees and to Defendant Coleman's counterclaims [dkt 77]. The parties have fully briefed Ingram Defendants' motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Ingram Defendants' motion for attorneys' fees and costs is GRANTED IN PART and

Plaintiffs' motion to enlarge time to respond to motion for attorneys' fees and to Defendant Coleman's counterclaim is GRANTED IN PART and DENIED IN PART.[1]

## II. BACKGROUND

In this case, Plaintiffs Talecia Chambers ("Talecia") and Billy Joe Chambers ("Billy Joe," and collectively, "Plaintiffs") filed their Complaint on March 13, 2009, alleging that Defendants published and sold Plaintiffs' book, entitled *Prodigy Hustler*, without authorization, thus violating state and federal laws. *Prodigy Hustler* details Billy Joe's life as an influential participant in the crack and cocaine drug trade in Detroit. While incarcerated, Billy Joe wrote *Prodigy Hustler*. Talecia, Billy Joe's daughter, registered *Prodigy Hustler* with the United States Copyright Office.

In September of 2006, Defendant Erica Coleman ("Coleman"), a distant relative of Plaintiffs, was contacted by Billy Joe to assist in editing and finishing the book. Coleman agreed. On March 2, 2007, Coleman created a publishing and printing account with Ingram Defendants.[2] After Coleman created an account with Ingram Defendants, Billy Joe ordered any further printing, production, or distribution of the book to cease. Ingram Defendants immediately ceased publication. According to Ingram Defendants, they received a total of $987.18 in profit from the sales of *Prodigy Hustler*. On March 13, 2009, Plaintiffs filed their

---

1 The Court GRANTS Plaintiff's motion [dkt 77] to the extent that it requests an enlargement of time to respond to Ingram Defendants' motion for attorneys' fees and accepts the response filed by Plaintiffs on February 21, 2012. The Court will consider the February 21, 2012, response in addressing Ingram Defendants' motion. The Court, however, DENIES Plaintiffs' request to the extent that it seeks additional time to respond to Defendant Coleman's counterclaims. Plaintiffs have provided no basis upon which to permit such an extension. Moreover, the court record indicates that Plaintiffs filed an untimely answer on March 9, 2011. *See* dkt 48.

2 Defendant Lightning Source, Inc. does business with its partner Defendant Ingram Book Group Inc., which operates under the assumed name Ingram Book Company.

Complaint against Coleman and Ingram Defendants. In response, Coleman asserted counterclaims against Plaintiffs

After initial motion practice and discovery, Ingram Defendants and Coleman filed motions for summary judgment. The Court granted their motions for summary judgment on Plaintiffs' remaining claim of federal copyright infringement. The Court found that Coleman, as an authorized agent of Plaintiffs, entered into an agreement with Ingram Defendants to print and publish *Prodigy Hustler*. The Court therefore concluded that Ingram Defendants printed and published Plaintiffs' copyrighted work with permission.

Ingram Defendants now request an award of attorneys' fees in the amount of $75,333.75 and costs in the amount of $4,374.41 pursuant to 17 U.S.C § 505. Ingram Defendants were represented by two attorneys with Honigman Miller Schwartz and Cohn LLP ("Honigman")—Attorney Brian D. Wassom and Attorney Andrea Bradley-Lipsey. Attorney Wassom has submitted documentation in the form of a detailed time and expenses report ("Time and Expense Report") to substantiate the costs and fees.

While the motion was pending, Plaintiffs' counsel filed a motion for withdrawal. At a hearing before the Court, the motion was granted. The Court permitted Plaintiffs twenty days to obtain new counsel and forty days to respond to Ingram Defendants' motion for attorneys' fees and costs. Plaintiffs have not obtained counsel, but they have filed a response.

## III. LEGAL STANDARD

The Copyright Act allows a district court to award costs, including reasonable attorneys' fees, to the prevailing party. 17 U.S.C. § 505 provides:

> In any civil action under this title, the court in its discretion may allow the recovery of *full costs* by or against any party other than

> the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a *reasonable attorney's fee* to the prevailing party as part of the costs.

17 U.S.C. § 505 (emphasis added). The district court's discretion must be exercised in a manner consistent with the primary purposes of the Copyright Act. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). In this Circuit, the award of costs and attorneys' fees "is the rule rather than the exception and they should be awarded routinely." *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008); *see Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 362 (6th Cir. 2007).

Analyzing an award of fees to a prevailing defendant under § 505, the United States Supreme Court held that "'there is no precise rule or formula for making these determinations.'" *Fogerty v. Fantasy, Inc.*, 510 U.S. at 534 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983)). The Supreme Court, however, noted four non-exclusive factors to determine whether to award attorneys' fees under § 505: (1) frivolousness of the claim, (2) motivation, (3) reasonableness of the facts and legal claims, and (4) consideration of compensation and deterrence. *Fogerty*, 510 U.S. at 534 n.19. These factors have been adopted and applied as the standard for awarding fees under § 505 in this Circuit. *Thoroughbred Software*, 488 F.3d at 361.

## IV. ANALYSIS

Applying the plain language of § 505, the Court finds that Ingram Defendants are a prevailing party. They successfully defended against Plaintiffs' federal copyright claim and related state-law claims. In exercising its discretion, the Court will apply the *Fogerty* factors to determine whether allowing the costs and attorneys' fees accumulated from defending against Plaintiffs' claims justifies an award in favor of Ingram Defendants.

In response to Ingram Defendants' request, Plaintiffs argue that this case was dismissed based on the actions of their counsel, not the merits. Plaintiffs use eight of the twelve pages of their response brief to set forth Plaintiffs' counsel's purported violations under the rules of professional conduct. Plaintiffs conclude that an award of costs and attorneys' fees is unwarranted. Plaintiffs' counsel's purported violations are not an issue before this Court, but instead the Court is addressing Ingram Defendants' motion for cots and attorneys' fees. As such, the Court therefore finds these arguments irrelevant. The Court, however, has considered Plaintiffs' other relevant arguments addressing the costs and attorneys' fees while applying the *Fogerty* factors.

**A. *FOGERTY* FACTORS**

**1. Frivolousness and Reasonableness of the Facts and Legal Claims**

The Court finds that the first and third factors weigh in favor of granting Ingram Defendants' request for costs and attorneys' fees. Plaintiffs based their claims on the allegation that "the defendants' acts are and were performed without the plaintiffs' permission, license or consent." Compl. ¶19; *see also* Pls. Partial Summ. J. Mot. 2 ("[D]efendants . . . published the subject book . . . without the copyright owner's consent"). Plaintiffs, however, knew at the outset of this case that Billy Joe had entered in an agreement with Coleman to authorize her to publish, market, and sell the book. As the Court discussed in its opinion and order granting summary judgment in favor of Defendants on Plaintiffs' federal copyright claim:

> [T]he Agreement was effective in December of 2006 and was terminated on or around April 2007.
>
> In addition to editing the book as expressly stated in the Agreement, Coleman was authorized to perform additional duties, including publishing, marketing, and selling the book. The

> correspondences show that Billy Joe instructed Coleman to perform numerous other duties, including publishing, marketing, and selling the book. Coleman even informed Billy Joe of her intentions to contact several other publishers similar to Lightning Source to help print and distribute the book, to which Plaintiffs agreed. Most significant is the fact that Coleman entered into the publishing agreement with Lighting Source in the presence of and with the knowledge and authorization of Talecia. Talecia, who was present, is authorized to act on behalf of . . . Billy Joe.

Dkt 70 at 9.

It is clear that Plaintiffs' claims against Defendants are frivolous and unreasonable. While the evidence supporting the Court's findings was not discovered and produced to the Court until the parties completed discovery, Plaintiffs were aware of the agreement with Coleman and the related correspondences in which Billy Joe approved Coleman's actions in contacting publishers similar to Ingram Defendants to print and publish *Prodigy Hustler*. Thus, Plaintiffs were aware that Coleman was, at a minimum, acting as an agent for Plaintiffs. *See* dkt 70 at 10 ("Coleman was an agent of Plaintiffs, and—based on the express Agreement and further instructions of Billy Joe—Coleman was authorized . . . ."). Furthermore, Talecia was present at the time Coleman entered into the publishing agreement with Ingram Defendants. Talecia authorized the arrangement and made no objection at that time.

Moreover, when Ingram Defendants produced this evidence to the Court in their summary judgment motion, Plaintiffs failed to produce any evidence to dispute the agreement and correspondences between Plaintiffs and Coleman. See dkt 70 at 10 ("stating that "Plaintiffs fail[ed] . . . to cite to any specific place in the record that supports their assertion[s].").

Similar to Plaintiffs' federal claim for copyright, the Court dismissed Plaintiffs' four related state-law claims on similar grounds:

> The Court [found] that Plaintiffs' complaint . . . fail[ed] to differentiate or acknowledge the elements of their state-law claims. The few references in the complaint to the state-law claims are conclusory and fail to demonstrate the plausibility of Plaintiffs' entitlement to relief on such claims [and were] dismissed as a matter of law. Alternatively, if any of the state-law claims were sufficiently pleaded to survive dismissal, they would be preempted by the Copyright Act.

Dkt 26 at 5.

Therefore, the Court finds that to assert that Ingram Defendants were infringing Plaintiffs' copyright in *Prodigy Hustler* because Ingram Defendants lacked permission to do so is unreasonable and frivolous. Thus, these factors way in favor of Ingram Defendants.

**2. Plaintiffs' Motivation**

Whether Plaintiffs had proper motives in pursuing this action is questionable at best. It appears to the Court that Plaintiffs did not file this action with the goal to protect their federal copyright in *Prodigy Hustler*. Such is evident from Ingram Defendants' alleged illegal copying, which the Court has found was authorized, and settlement negotiations that occurred between the parties.

The extent of Ingram Defendants' purported copying amounted to $978.17 in profit. Ingram Defendants ceased any further publication of the book once Plaintiffs demanded such. Prior to Ingram Defendants filing an answer, they offered Plaintiffs $1,200 to settle the case. Talecia rejected the offer and explained in a letter that Plaintiffs would settle the matter for $1,200,000. She added, "That's our offer, if not, be prepared for a most vigorous battle." Talecia further noted the cost of legal fees that this case could cost and stated, "At $350 per hour this case could easily exceed $350,000 in just legal fees, notwithstanding costs, plus the same

amount that your client will have to pay for our legal fees—and you make a ridiculous and bad faith offer to settle for $1,200!"

Requesting such a large settlement sum in light of only a small number of copies and minimal profit, evinces a motivation far distinct from just attempting to protect their rights in the creative work. Under the Copyright Act, the copyright owner may seek actual damages and profit *or* statutory damages. *See* 17 U.S.C. § 504(b)–(c). The statutory damages to be assessed by the Court are between $200 and $150,000 for *each* copyright that is infringed. *See Id.* at § 504(c)(2). The Court may assess the statutory maximum if willful infringement is established. *Id.* Here, Plaintiffs were asserting infringement of a single copyright in this case. They also failed to prove any actual damages and the profit amounted to less than $1,000. Even assuming the statutory maximum of $150,000 was awarded, Plaintiffs' response to Ingram Defendants' settlement offer was wholly unreasonable.

Plaintiffs' correspondence with Ingram Defendants further substantiates their ill-motivation in pursuing this case. Accordingly, the Court finds that the second *Fogerty* factor also weighs in favor of awarding Ingram Defendants costs and attorneys' fees against Plaintiffs.

**3. Consideration of Compensation and Deterrence**

The Court also finds that this factor weighs in favor of Ingram Defendants. With respect to compensation, Ingram Defendants have received no award of damages by successfully defending against this action. As the Seventh Circuit has explained regarding a defendant's defense against copyright infringement claims:

> When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong. For without the prospect of such

> an award, the party might be forced into a nuisance settlement or deterred altogether from enforcing his rights.

*Assessment Technologies of WI, LLC v. Wire Data, Inc.*, 361 F.3d 434, 4337 (7th Cir. 2004) (citations omitted). The Court agrees with the Seventh Circuit's reasoning. An award of costs and fees to Ingram Defendants ensures that, despite the heavy cost of litigation without any monetary award, they can defend and enforce their rights against such frivolous cases without resorting to settlement.

This case illustrates the reasons for courts to award costs and fees. Without an award of costs and fees, the profitability of Ingram Defendants as corporate entities that disseminate creative works to the public would cease. The printing and publishing of *Prodigy Hustler* netted Ingram Defendants a profit of less than $1,000. Once one accounts for the almost $80,000 in legal costs to defend their right to this profit, companies similar to Ingram Defendants will be unable to afford to print and disseminate such creative works to the public or their services will increase to a level where small-scale authors similar to Plaintiffs will be unable to afford publishing and printing. Their works will not reach the public. This result is contrary to the purpose of the Copyright Act. A significant purpose of the Copyright Act is to "enrich[] the general public through access to creative works." *Fogerty*, 510 U.S. at 527. Thus, an award of costs and attorneys' fees comports with the purpose of the Copyright Act.

As a deterrent effect, there is an interest to deter an author similar to Plaintiffs from filing such a case against other publishers that were authorized to print and publish a creative work. Deterrence is accomplished by awarding the costs and fees of Ingram Defendants' defense against Plaintiffs. Moreover, the 220.5 hours expended by Ingram Defendants' counsel were partially the result of Plaintiffs' conduct in prosecuting their baseless claims. Plaintiffs were

show-caused by the Court several times, refused to participate in discovery, and responded to Defendants' motions for summary judgment without producing substantial evidence to support their claims. These actions all resulted in an increase of costs to Ingram Defendants to defend against Plaintiffs' claims. As the list provided by Ingram Defendants in their brief demonstrates:

> [1] On April 19, 2010, Plaintiff Talecia Chambers failed to appear for the deposition of Erica Coleman;
>
> [2] On September 7, 2010, the Court admonished Plaintiffs for forging the date on the summons they served on Coleman to make the service appear timely [dkt 28];
>
> [3] Between August 4 and October 1, 2010, Plaintiffs ignored their duty to contact Defendants' counsel and draft a case summary [dkt 32];
>
> [4] On October 7, 2010, Plaintiffs failed to appear at the Court's Scheduling Conference, purportedly because their counsel (who had not yet filed an appearance) went to the wrong courthouse. This Court ordered Plaintiffs to show cause why it should not dismiss the case on this basis [dkt 35];
>
> [5] On February 18, 2011, Coleman sought entry of default on her counterclaims, which Plaintiffs (despite by then having counsel) had gone six months without answering [dkt 38];
>
> [6] On March 18, 2011, the magistrate judge found that Plaintiffs' counsel had failed to answer two sets of requests to admit, and that they had even persisted in that failure for an entire month after Defendants moved to deem the requests admitted [dkt 54]. This Court later upheld the decision to deem the requests admitted [dkt 69];
>
> [7] On May 6, 2011, Plaintiffs' counsel filed a response to Defendants' summary judgment motions that did not even acknowledge, let alone address, any of Defendants' evidence, much of which Plaintiffs themselves produced in discovery. [dkt 66] Nor did Plaintiffs cite to a single piece of evidence in opposition to the motion. In fact, much of the response consisted of off-point passages cut and pasted from . . . the Plaintiffs' April 1 appeal from Magistrate Judge Morgan's ruling.

Def. Mot. for Att. Fees Br. 11. Therefore, Plaintiffs' conduct in this case also weighs in favor of an award to Ingram Defendants. Such an award provides deterrence to Plaintiffs from committing such conduct in the future. *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 628 (6th Cir. 2004) ("[A] party's litigation tactics may weigh in favor of an award of fees when the conduct supports an inference concerning motivation or a particular need for deterrence.").

Considering the lack of compensation to Ingram Defendants as the prevailing parties, the deterrence effect on other authors filing similar frivolous cases, the deterrence effect on Plaintiffs of filing similar cases against other publishers, and Plaintiffs' conduct in prosecuting this case, the Court finds that this factor also weighs in favor of awarding costs and attorney fees in favor of Ingram Defendants.

**4. An Award Comports with the Purposes of the Copyright Act**

While not a separate enumerated *Fogerty* factor, the Court finds it significant to also note several additional reasons why an award in favor of Ingram Defendants comports with the Copyright Act. First, the outcome of this case will provide guidance to publishers like Ingram Defendants who were authorized to publish a work, but with whom the author later cancels the agreement and sues for copyright infringement. Second, the Court's analysis of Coleman's authority to publish *Prodigy Hustler* as an agent of Plaintiffs will also provide guidance to publishers as to the type of circumstances that create an agency relationship. *See* dkt 70 at 9–10. Third, the Court addressed and further developed preemption under the Copyright Act by dismissing Plaintiffs' state-law claims due to the Copyright Act's preemptive force. *See* dkt 26

at 5–6. Fourth, the Court analyzed a co-authorship argument as to whether Billy Joe lacked standing to sue because Coleman may have been a co-author. *See* dkt 26 at 6–8.

Thus, litigation and defense of this case by Ingram Defendants has added to the emerging legal issues under the Copyright Act and promoted the goals of the Copyright Act by disseminating authorized creative works such as *Prodigy Hustler* to the public.

**5. Conclusion**

Based on the Court's review of the non-exclusive *Fogerty* factors, the Court finds that permitting Ingram Defendants to recover their "full costs," including attorneys' fees, is justified and comports with the purpose of the Copyright Act. *See Fogerty*, 510 U.S. at 534; *Thoroughbred Software Int'l, Inc.*, 488 F.3d at 362. Accordingly, the Court exercises its discretion to find that Ingram Defendants are entitled to attorneys' fees and costs under 17 U.S.C. § 505.

**B. ATTORNEYS' FEES AND COSTS**

After a finding that fees and costs are warranted to the prevailing party under 17 U.S.C. § 505, the lodestar method is used to calculate the reasonable fees and costs. *Hensley*, 461 U.S. at 433. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The party requesting an award of costs and attorneys' fees must produce evidence "to justify the reasonableness of the requested rate." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). The party must submit evidence in a manner that enables the court to review the reasonableness of the fees charged. *Hensley*, 461 U.S. at 433. The inability to determine the reasonableness may warrant a reduction of the fees by the court. *Id.* The court looks to the prevailing market rate to

substantiate the reasonableness of the requested hourly rate. *Northcross v. Bd. of Educ.*, 611 F.2d 624, 638 (6th Cir. 1979).

**1. Reasonable Hourly Rate**

The Court will refer to the most recent State Bar of Michigan's 2010 Economics of Law Practice Survey ("the Survey"). This publication is routinely used as evidence of reasonableness in determining an attorney's hourly rate. *See Int'l-Matez Tank Terminals-Ill. v. Chemical Bank*, No. 1:08-cv-1200, 2010 WL 3238917, at *6 (W.D. Mich. Aug. 16, 2010); *Meyer v. Macomb Twp.*, No. 06-14953, 2010 WL 891268, at *2 n.3 (E.D. Mich. Mar. 10, 2010); *Asmar v. Benchmark Literacy Grp., Inc.*, No. 04-70711, 2007 WL 925623, at *3 (E.D. Mich. Mar. 28, 2007). The Court will also consider the declaration of Honigman's Billings and Collections Partner and prior judicial decisions as evidence of a reasonable hourly billing rate in this District.

Attorney Wassom has practiced with Honigman since 2000. The Declaration provided by Attorney Wassom demonstrates his work experience. As set forth in Ingram Defendants' brief and supported by the Declaration:

> Mr. Wassom . . . has been with Honigman since September 2000. He became a Non-Equity Partner at Honigman in 2005, and an Equity Partner in 2011. Within that timeframe, Mr. Wassom has developed extensive experience in the areas of copyright, trademark, publicity rights, media, and related litigation. He was recognized by The Best Lawyers in America in 2011 and 2012 in the field of IP Litigation, and by Michigan Super Lawyers as a Rising Star in 2009 and 2011. He has also become a legal blogger and an in-demand public speaker on intellectual property and other issues.

Def. Mot. for Att. Fees Br. 15 (internal citations omitted).

Attorney Bradley-Lipsey was an associate at Honigman who was delegated parts of this case to assist Attorney Wassom. Attorney Wassom seeks an hourly rate of $325 per hour for

hours billed in 2009, $340 per hour for those billed in 2010, and $375 per hour for those billed in 2011. For the hours billed by Attorney Bradley-Lipsey, Ingram Defendants seek an hourly rate of $250 per hour for those billed in 2010 and $265 per hour for those billed in 2011.

Comparing these requested rates to the documentation reviewed by the Court, the Survey indicates that litigation attorneys with similar years of experience to Attorney Wassom charge a median hourly billing rate of $211, and the 95th percentile of those attorneys bill an hourly rate of $400. Similar to Attorneys Wassom and Bradley-Lipsey, attorneys located in Detroit charge a median hourly billing rate of $290, while the 95th percentile of attorneys charge an hourly billing rate of $525. Similar to the subject matter litigated in this case, Michigan intellectual property attorneys charge a median hourly billing rate of $268, whereas the 95th percentile of attorneys charge an hourly rate of $455. Likewise, the median hourly litigation rate for a law firm with more than 50 attorneys like Honigman is $313, with the 95th percentile of these firms charging an hourly rate of $525.

The Declaration of Carl W. Herstein, Honigman's Billings and Collections Partner, verifies that Attorneys Wassom's and Bradley-Lipsey's hourly rates are reasonable. According to the Declaration, Mr. Herstein has served in this capacity, or a similar capacity, for over 15 years. His Declaration confirms that Attorney Wassom's hourly rate of $325 per hour in 2009, $340 per hour in 2010, and $375 per hour in 2011 are reasonable hourly rates. He likewise confirms that Attorney Bradley-Lipsey's hourly rate as an associate at Honigman of $250 per hour in 2010 and $265 per hour in 2011 are reasonable hourly rates.

Based on a previous Court decision, the Court has awarded a former partner at Honigman $400 as a reasonable hourly rate in a copyright case. *RDI of Mich., LLC v. Mich. Coin-Op*

*Vending, Inc.*, No. 08-11177, 2010 U.S. Dist. Lexis 10921, at *6–8 (E.D. Mich. Feb. 9, 2010). The Court also noted in its previous decision other judges in this District awarding fees of $400 or more in similar litigation. *Id. See also Controversy Music v. Packard Grill, LLC*, No. 10-cv-12015, 2011 U.S. Dist. Lexis 9485, at *13–14 (E.D. Mich. Feb. 1, 2011) (Borman, J.) (finding that "Mr. Wassom is a very experienced and reputable attorney"and awarding an hourly rate of $330); *LGL Music v. Blue Line, Inc.*, No. 05-70326, 2005 U.S. Dist. Lexis 38938, at *4 (E.D. Mich Dec. 29, 2005) (O'Meara, J.) (awarding "the full amount of [Mr. Wassom's] costs and attorneys' fees incurred in this case, including costs and fees incurred subsequent to the filing of [his clients'] summary judgment motion").

Accordingly, the Court finds that hourly billing rates of $325 per hour in 2009, $340 per hour in 2010, and $375 per hour in 2011 with respect to Attorney Wassom are reasonable hourly rates for his level of experience and this type of litigation. Likewise, the hourly rates of Attorney Bradley-Lipsey of $250 per hour in 2010 and $265 per hour in 2011 are reasonable hourly rates as an associate at a large Detroit firm.

**D. Reasonable Number of Hours Expended**

Turning to the amount of hours billed, Attorney Wassom has included the Time and Expense Report regarding the hours billed and costs incurred throughout this litigation. The Time and Expense Report contains a line-by-line listing of the hours billed in quarter-hour increments. Each entry of hours billed includes a corresponding narrative explaining the work completed during that time. According to the Time and Expense Report, the total number of hours expended on this litigation is 220.50 hours. 36.75 of those hours were billed by Attorney Bradley-Lipsey and 183.50 hours were billed by Attorney Wassom. An additional .25 hour was

billed by an unidentified attorney who is noted on the Time and Expense Report as "MYL." The hours totaled in the report have been multiplied by the applicable hourly rate and displayed in three columns. The first column is labeled "TOBILL AMT," the second column is labeled "BILLED AMT," and the third column is labeled "STD AMT." The total amount of fees computed in the "TOBILL AMT" column is $75,333.75. The same amount is computed in the "STD AMT" column. The fees computed in the "BILLED AMT" column, however, total $69,802.50.

The Court first notes the difference in amounts between the "TOBILL AMT" column and the "BILLED AMT" column. Ingram Defendants' motion seeks the amount listed in the "TOBILL AMT" column, but provides no explanation as to why this total is requested rather than the total in the "BILLED AMT" column. The Time and Expense Report contains no other information explaining the difference between the two columns. Attorney Wassom's Declaration also provides no explanation as to why the totals are different. It appears to the Court that the "BILLED AMT" column is a tabulation of the hours actually billed to the client, whereas the "TOBILL AMT" column includes all hours the assigned attorneys worked on the matter. For some reason, which is not explained to the Court, these hours appear to not have been billed to the client. The Court has the responsibility to ensure that the award of fees is reasonable. *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d at 596. The Court finds that a fee award based on hours that may not have been billed to the client is unreasonable. As such, the Court is reducing the hours expended on this case to reflect the hours tabulated in the "BILLED AMT" column. *See Tinch v. City of Dayton*, 199 F. Supp. 2d 758 (S.D. Ohio Apr. 30, 2002) (reducing attorney's claimed hours by 30% due to questionable reporting accuracy).

The Court further reduces Ingram Defendants' hours expended on this case by .25 hours because Ingram Defendants' motion contains insufficient evidentiary support on who the unidentified attorney is that justified an hourly rate of $420. *See Blum*, 465 U.S. at 896. The Court will deduct this .25 hour from the total number of hours expended. The Court finds that the others hours entered on the Time and Expense Report and totaled in the "BILLED AMT" column are reasonable based on the Court's knowledge of the history of this case.

The history of this case dates back to the filing of Plaintiffs' Complaint in December of 2009. Plaintiffs then filed a motion for partial summary judgment, to which Ingram Defendants filed a response. Ingram Defendants then filed a motion for judgment on the pleadings. After the motions were briefed, the Court denied Plaintiffs' motion and partially granted Ingram Defendants' motion. The case proceeded on Plaintiff's remaining federal copyright claim. After discovery, including Plaintiffs' failure to cooperate, Ingram Defendants and Coleman filed motions for summary judgment. Once the motions were briefed, the Court granted the motions in favor of Defendants and dismissed Plaintiffs' Complaint.

In sum, this case went through two rounds of dispositive motions, which included discovery related motion practice before the assigned magistrate judge, before Plaintiffs' case was dismissed. The case required a great deal of diverse legal skill, as it required command of federal copyright law and effective motion practice. Attorneys Wassom and Bradley-Lipsey exhibited these skills. Ingram Defendants succesfully defended against a case that Plaintiffs asserted was worth $1,200,000. The Court finds that the hours expended obtained a successful result for Ingram Defendants. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("The most

critical factor in determining the reasonableness of a fee award is the degree of success obtained.") (citation omitted).

Accordingly, the Court finds that the reasonable hours calculated in the "BILLED AMT" column, minus the .25 hour performed by an unidentified attorney, is reasonable. The Court finds that the hours expended multiplied by the applicable hourly rate as calculated on the Time and Expense Report totals $69, 697.50.

**3. Calculation of Costs**

The Copyright Act permits the Court, "in its discretion" to "allow the recovery of *full costs* by or against any party." 17 U.S.C. § 505 (emphasis added). Additionally, "[c]ourts have routinely held that the award of full costs under the Copyright Act is mandatory." *Microsoft Corp. v. Compusource Distribs., Inc.*, 115 F. Supp. 2d 800, 812 (E.D Mich 2000); *see Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002); *20th Cen. Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005) ("[c]onstruing § 505 as limiting the costs that may be awarded to any particular subset of taxable costs effectively reads the word 'full' out of the statute").

Ingram Defendants request an award of costs as detailed on the Time and Expense Report. The costs include court fees, subpoena fees, FedEx courier service fees, Lexis and Westlaw research, photocopying and other document production, public access to court records, and travel expenses. These items are also separated into the same three columns discussed previously: "TOBILL AMT," "BILLED AMT," and "STD AMT." For the same reasons discussed above, the Court will start its analysis with the total in the "BILLED AMT" column, despite Ingram Defendants' request for costs based on the total in the "TOBILL AMT" column. The "BILLED AMT" column tabulates a total of $4,370.21. Based on a review of the expenses

and the Court's discretion to award "full costs," the Court finds Ingram Defendants' costs to be reasonable. Accordingly, the Court grants Ingram Defendants the reasonable costs of $4,370.21.

**4. Conclusion**

As calculated above, and for the foregoing reasons, Ingram Defendants are entitled to an attorneys' fee of $69,697.50 pursuant to 17 U.S.C. § 505. This amount adequately compensates Ingram Defendants' counsel for their efforts expended in this litigation and it encourages publishers similar to Ingram Defendants to undertake a defense in similar litigation. Ingram Defendants are further entitled to the "full costs" of $4,370.21 pursuant to 17 U.S.C. § 505.

## V. CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that Defendants Ingram Book Company, Ingram Publisher Services Inc., and Lightning Source Inc.'s motion for attorneys' fees and costs [dkt 71] is GRANTED IN PART, and they are awarded reasonable costs, including attorneys' fees, in the amount of $74,067.71 against Plaintiffs.

IT IS FURTHER ORDERED that Plaintiffs' motion to enlarge time to respond to motion for attorneys' fees and to Defendant Coleman's counterclaims [dkt 77] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Date: March 20, 2012